THE STATE v. RICHARDSON.

1. CRIMINAL PROCEDURE.—A defendant does not *consent* to a proceeding in a criminal case when he simply stands mute.

2. CRIMINAL LAW—FORMER JEOPARDY—CONSTITUTION 1895.—A defendant put upon trial in a criminal case by empanelling and swearing in the jury, one witness having been examined, and the case then withdrawn from the jury, has been put in jeopardy, and under the Constitution of 1895, sec. 17, art. 1, cannot again be tried for same offense, notwithstanding act was committed under Constitution of 1868,

Before BUCHANAN, J., Sumter, March, 1896.    Reversed.

The defendant, Aaron R. Richardson, was indicted for larceny of live stock, and put upon trial. After one witness was examined, solicitor asked to withdraw case on account of absence of witnesses. Case was withdrawn, and defendant put on trial next day for same offense under same indictment. Upon his entering the plea of former jeopardy, Judge Buchanan made the following order:

Mr. Stenographer, at the calling of the State against Aaron R. Richardson, when called upon to plead, he interposes the plea of former jeopardy. The offense charged in the indictment is alleged to have been committed on the 27th day of November, 1895, before the new Constitution went into effect. The defendant contends that the change

in the provisions of the new Constitution means such a change as allows a plea of former jeopardy instead of former acquittal or former conviction under the Constitution of 1868. That by reason of having been put upon trial yesterday, he was arraigned and plead not guilty, and one witness being examined on the stand, under such examination or procedure, or whatever it may be called, was putting the prisoner in former jeopardy under the new Constitution, and that by reason of such former jeopardy he is now entitled to his discharge. On the part of the State it is contended that he was in no jeopardy, and that the case could be withdrawn from the jury at any time before a verdict was reached; that being surprised and having only one witness on the stand, and not being sufficient to make out the case, the offense having been committed before the new Constitution went into effect, he was entitled to trial, and the State was entitled to put him upon trial again and produce its witnesses as if nothing had occurred looking to his trial.

The Court holds, it being a novel question, there being no decision since the new Constitution was adopted upon the point, and the Court having no authorized official copy of the Constitution before it, the offense having been committed before the new Constitution went into effect, and being in doubt as to the proper conclusion to come to, there being no authority, and the prisoner being entitled to appeal and the State not being entitled to appeal, in order that the question may arise and be decided as early as possible, the prisoner's plea of former jeopardy is overruled.

The trial proceeded, the defendant was found guilty and sentenced. From this judgment he appeals.

*Mr. Albert L. Moise,* for appellant, cites: 65 Ala., 492; 17 Ia., 329; Cool. Con. Lim., 326; 11 A. & E. Ency., 926; Con. 1895, sec. 17, Bill of Rights; 1 Bish. on Crim. Law, 7 ed., 1013; 13 Ind., 215; 7 Ind., 324; 11 A. & E. Ency., 927, 949, 952, 950, 951; 3 Hor. (Del.), 562; 8 Vt., 57; 43 N. Y., 508; 8 Clarke (Ia.), 288; 20 Tex. App., 139; 14 Ohio,

295; 26 Ark., 334; 44 Ala., 393; 26 Ark., 260; 3 W. Va., 699; 38 Cal., 467; 48 Cal., 323; 24 Ohio, 134; 5 Hun., 297; 9 Bush., 333; 14 Ind., 139; 1 Bish. Crim. Law, 1016–1043; 8 Ala., 951; 1 Tyler, 178; 12 Vt., 93, 102; 4 Blackf., 345; Thacher Cr. Cas., 132; 7 Gray, 328; 2 McLean, 114; 14 Ohio, 295–305; 3 Kelly, 53; 8 Blackf., 540; 2 Caines, 304; 25 Pick., 356; Jebb, 270; Clark's Crim. Law, 374; 5 Ind., 290; 6 Serg. & R. (Pa.), 24; 19 Ohio, 423; 14 Wend. (N. Y.), 9; 28 Grat., 950; 86 N. C., 596; 105 Pa. St., 1; 2 Mill Con. (S. C.), 155; 6 Serg. & R. (Pa.), 577; 13 Ind., 215; 38 Cal., 467; 55 Ga., 521; 53 Miss., 439; 48 Cal., 323; 9 Bush., Ky., 333; 149 Mass., 7; 2 Parker Cr. R., N. Y., 676; 5 Ind., 290; 2 Caines, N. Y., 304; 7 A. & E. Ency., 530; 11 Gray, 237; 12 Cush., 247; Cool. Con. Lim., 272; 2 Rich., 218; 6 S. & R., 586; 2 Yerg., 24; 2 Grat., 568; 17 Wend., 386; 14 Ohio, 295; 19 Ohio, 423; 5 Ind., 292; 23 Pa. St., 12; 26 Ark., 260; 20 Pick., 365; 5 Cold., 311; 5 Iowa, 288.

*Solicitor, Wilson,* contra, filed no argument.

July 16, 1896. The opinion of the Court was delivered by MR. CHIEF JUSTICE McIVER. The defendant in this case was arraigned under an indictment for grand larceny, in stealing live stock, on the second day of March, 1896, and upon his arraignment pleaded not guilty, and thereupon a jury was duly empanelled and sworn, according to law, and charged with the trial of the case. The solicitor having open the case for the State and examined the prosecutor as a witness, discovered that one of his witnesses was absent, he having been permitted, by mistake, to go home, and he thereupon moved the Court "to withdraw the case from the jury, and the Court (there being no objection made by the prisoner) did withdraw the said case from the jury, and had the prisoner remanded to jail, and ordered the next case on, which was the *State* v. *James Bracy,* which was tried and disposed of. That on the next day, to wit: on Tuesday, the 3d day of March, 1896, the said

Aaron R. Richardson was again brought into court and arraigned for the same identical offense for which he had been put on trial the day before, held and arraigned under the same indictment, and upon his arraignment, through his counsel, put in plea of former jeopardy, viz: that he was put in jeopardy for the same offense on the day before. To this the solicitor replied that he had not been put in jeopardy such as the law contemplated, which was an acquittal or conviction." His Honor, Judge Buchanan, overruled the plea for the reasons set forth in the "Case," which should be incorporated in the report of this case, and the trial proceeded, which resulted in a verdict of guilty, and sentence having been passed, defendant appeals upon the ground set out in the record, which makes the single question, whether there was error in overruling the plea. One of the settled rules of the common law was, that no one shall be twice put in jeopardy upon the same charge. As is said in Cooley on Const. Lim., 2d edit., at page 325–6: "One thing more is essential to a proper protection of accused parties, and that is that one shall not be subject to be twice put in jeopardy upon the same charge;" and at page 327, the same author says: "A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon indictment or information, which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been empanelled and sworn. The defendant then becomes entitled to a verdict, which shall constitute a bar to a new prosecution; and he cannot be deprived of this bar by a *nolle prosequi* entered by the prosecuting officer against his will, or by a discharge of the jury and continuance of the cause." The same doctrines are laid down in 1 Bish. Crim. Law (6th edit.), at sec. 1013, *et seq.*, and are fully recognized in the leading case of *The State* v. *McKee*, 1 Bail., 651. If, therefore, this question is to be determined by these well settled principles of the common law, there could be no doubt that

there was error in overruling the plea of former jeopardy;
for the "Case" shows that the defendant was put upon his
trial under a valid indictment, before a court of competent
jurisdiction, and after a jury was charged with the trial of
the case, and after one witness in behalf of the State had
been examined, the solicitor was permitted to withdraw the
case from the jury, simply for the reason that one of his
witnesses was absent, and the defendant was, on the next
day, again put upon his trial for the same identical offense.
It is true, that it is stated in the "Case," that when the soli-
citor moved to withdraw the case from the jury, no objec-
tion was made by the prisoner; but it also appears in the
"Case" that the prisoner was not, at that time, represented
by counsel, and it would be a harsh rule to hold that de-
fendant *consented* to a withdrawal of the case from the jury
simply because he interposed no objection, which, possibly,
he did not know he had a right to do.     Besides, *con-
sent* is active, while not objecting is merely passive.

The old adage, "silence gives consent," is not true
in law; for there it only applies where there is some duty
or obligation to speak—*State* v. *Edwards*, 13 S. C., 30;
*State* v. *Senn*, 32 S. C., 401.   If it had appeared in the
"Case," as it does not, that the prisoner was asked whether
he objected to the motion to withdraw the case from the
jury, and he had said no, or had even remained silent, then
the result would have been different.   As it was, however,
we think it would be going too far to hold that he con-
sented to a withdrawal of the case.   Indeed, as was said
by Mr. Justice McGowan, in *State* v. *Briggs*, 27 S. C., at
page 85: "Where a party is put to his trial upon a criminal
charge, the case must proceed in the manner prescribed by
law until a verdict or a mistrial is reached.   We know of
no authority for suspending it for a time, or even to stop
short of a verdict, except in extraordinary circumstances,
such as the illness of one of the jury, the prisoner or the
court, the absence of a juryman, or the impossibility of
agreeing on a verdict."   It would be a fearful thing to vest

in a prosecuting officer the power to stop a trial after it had commenced, simply because such officer found that he was unable to establish the charge, by reason of the absence of a witness, or a failure to prove what he had expected; for, as said by O'Neall, J., in *State* v. *McKee, supra:* "It would be, in effect, allowing to the solicitor a power which this Court denies that itself possesses, of subjecting the prisoner to a new trial, as often as it might be necessary to obtain a verdict of guilty." Of course, no one who knows the officer who conducted the prosecution in this case would, for a moment, suspect him of abusing the powers committed to him, but the Court must lay down rules applicable to *all* cases and to *all* persons alike, and cannot permit such rules to be affected by the deservedly high character of this particular officer.

It may be said that this question is not to be determined by the rules of the common law, but by the express constitutional provision contained in section 18 of article I. of the Constitution of 1868, which was in force at the time the offense charged against the defendant was committed, to wit: on the 27th day of November, 1895; and that it has been held in *State* v. *Shirer*, 20 S. C., 406–7, and *State* v. *Wyse*, 33 S. C., 589, under that constitutional provision, the benefit of the plea of former jeopardy could only be invoked where the prisoner has once been acquitted by a jury of the same offense; for that section reads as follows: "No person, after having been once acquitted by a jury, shall again, for the same offense, be put in jeopardy of his life or liberty." Accepting these two cases as a correct construction of the constitutional provision just quoted, it may be well contended that the entry of a *nolle prosequi*, or a withdrawal of a case from the jury after it has been charged therewith, amounts to an acquittal, for there is high authority for that view. In 11th Am. & Eng. Ency. of Law, 949, it is said: "Before the jury is empanelled and sworn, the prosecuting officer may enter a *nolle prosequi* at his pleasure, and it will be no bar to a subsequent prosecu-

tion for the same act; but if it is entered after the jury is empanelled and sworn, without the consent of the defendant, it is equivalent to an acquittal, and he cannot be again put in jeopardy for the same offense." On the next page, we find the same doctrine, as to the effect of a discharge of the jury, announced in the following language: "The discharge of the jury, in a criminal case, upon a valid indictment, without the consent of the defendant, not called for by imperious necessity, operates as an acquittal, and bars a further trial;" and this doctrine is supported by quite a number of cases cited in the notes. To the same effect, see 1 Bish. Crim. Law, sec. 1016. And in our own case of *State* v. *McKee, supra,* it was held, that after a jury has been charged with the trial of a prisoner upon an indictment for a capital offense, they cannot be discharged, and the prisoner remanded for a second trial, except for the following causes: 1. The consent of the prisoner. 2. The illness of one of the jury, the prisoner, or the Court. 3. The absence of one of the jurors. 4. The impossibility of their agreeing upon a verdict. In the conclusion of the opinion of the Court in that case, O'Neall, J., uses the following language: "The solicitor having entered a *nolle prosequi*, after the jury were charged, and they being discharged without any lawful cause upon which the prisoner can be remanded for trial a second time, it follows that he is acquitted." So here we might say, that after the jury were charged with the trial of this case, they having been discharged without any lawful cause, the prisoner "is acquitted." Hence, even if the question which we are called upon to determine is to be governed by the terms of the Constitution of 1868, above quoted, there would still be the strongest reason for holding that the plea of former jeopardy should have been sustained.

But as the Constitution of 1868 had been superseded by the provisions of the present Constitution, before this plea was interposed, we do not see how its validity can be properly tested by a constitutional provision which had been

abrogated before the plea was filed, and before the facts
upon which the plea is based occurred; for the facts upon
which such plea is based occurred in March, 1896, long
after the present Constitution went into effect. The de-
fendant is asserting a right guaranteed to him by a pro-
vision of the present Constitution, which right arose and is
founded upon certain facts which occurred since the adop-
tion of the present Constitution, and we can see no propriety
in testing such right by a provision of a former Constitu-
tion which had been abrogated or superseded before the
right in question arose. The fact that the offense with
which the defendant is charged was alleged to have been
committed before the adoption of the present Constitution,
and while the Constitution of 1868 was in force, cannot
affect this question. In subdivision three (3), of section 11,
of article XVII., of the present Constitution, it is declared
as follows: "The provisions of all laws which are inconsist-
ent with this Constitution shall cease upon its adoption,
except that all laws which are inconsistent with such pro-
visions of this Constitution as require legislation to enforce
them, shall remain in force until such legislation is had."
And in subdivision five, of the same section, of the same
article, the provision is as follows: "All indictments which
shall have been found, or may hereafter be found, for any
crime or offense committed before the adoption of this Con-
stitution, may be prosecuted as if no change had been made,
except as otherwise provided herein." Hence, as the in-
dictment in this case charged a crime committed before the
adoption of the present Constitution, it should be prose-
cuted as if no change had been made, *except as otherwise*
*provided in the present Constitution.* Now, as section 17,
of article I., of the present Constitution, amongst other
things, provides as follows: "nor shall any person be sub-
ject, for the same offense, to be twice put in jeopardy of
life or liberty," which secures the exemption of every per-
son charged with crime from being twice tried upon the
same charge, in phraseology different from that employed,

for the same purpose, in section 18, of article I., of the Constitution of 1868, if there is any inconsistency between the two provisions, then, by the express terms of subdivision three, of section 11, of article XVII., of the present Constitution, above quoted, the provisions of the Constitution of 1868 had ceased and determined before the facts occurred upon which the plea in question was founded, and there was no provision then in force, except that found in the present Constitution, for it is quite clear that such provision required no legislation to enforce the same. And, as declared by subdivision five, of section 11, of article XVII., above set out, this indictment charging a crime committed before the adoption of the present Constitution must be prosecuted under the law as changed by the present Constitution. This view does not come in conflict with the constitutional provision forbidding the enactment of any *ex post facto* law; for, as is said by Cooley, in his work on Const. Lim., 265–6, "I do not consider any law *ex post facto*, within the prohibition, that mollifies the rigor of the criminal law, but only those that create or aggravate the crime or increase the punishment, or change the rules of evidence for the purpose of conviction." In accordance with this view, it has been held in this State, in the case of the *State* v. *Williams*, 2 Rich., 418, that a person convicted of forgery, when that crime was punished with death, and, pending his appeal, the legislature passed an act reducing the punishment, must suffer the reduced punishment, although the act was passed after the offense had been committed, and after conviction thereof. So, in *State* v. *Sullivan*, 14 Rich., 28, it was held, that an act reviving the jurisdiction of a superior court, so as to enable it to try persons for offenses committed during a period when an inferior court had exclusive jurisdiction to try them, is not an *ex post facto* law. See, also, to the same effect, *State* v. *More*, 15 Rich., 57, and *State* v. *Howard*, 15 Rich., 274, as well as the recent case of *State* v. *Cooler*, 30 S. C., 105. It seems to us the principle is well stated in Cooley on Const. Lim., 272, as

follows: "So far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when its facts arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime." If, therefore, it be true, as seems to have been supposed, that the immunity granted by the Constitution of 1868 to a person accused of crime from being twice put in jeopardy of his life or liberty, extended only to a case in which the accused has once been formally acquitted by a jury, and the provision of the present Constitution extends such immunity to a case in which the accused has once before been "*put in jeopardy* of his life or liberty," in the long-established and well-recognized sense of those terms, so that a formal acquittal by a jury is not now necessary to sustain a plea of former jeopardy, it is quite certain that the new provision, so far from dispensing "with any of those substantial protections with which the (previously) existing law surrounds the person accused of crime," actually "mollifies the rigor of the criminal law," and really enlarges the immunities previously afforded. It is clear, therefore, that the present constitutional provision, even when applied to a case which arose prior to the adoption of the present Constitution, cannot, with any propriety, be regarded as an *ex post facto* law. Indeed, unless the accused can avail himself of the immunity from a second prosecution for the same offense afforded by the provision of the present Constitution, the practical effect would be to

deny him such immunity altogether; for if the provision of the Constitution of 1868 is inconsistent with that found in the present Constitution, as seems to be supposed, he could not avail himself of the provision in the Constitution of 1868, for, as we have seen, that provision was abrogated before the facts occurred upon which his plea rested, and hence he would be left without remedy.

We must conclude that the plea interposed by defendant should be tested by the provision of the present Constitution, and those provisions being couched in terms familiar in the common law, should receive the same construction and be given the same signification as was well settled at the common law. And, as we have seen, the well settled construction was that a person is said to be put in jeopardy whenever he is put upon his trial before a court of competent jurisdiction, under a valid indictment, and a jury has been charged with his trial; and the jury is said to be thus charged when they are empanelled and sworn. If, after that, the prosecuting officer enters a *nolle prosequi,* or withdraws the case from the jury without the consent of the prisoner, it operates as an acquittal, and he cannot again be put upon his trial for the same offense. We think, therefore, that the Circuit Judge erred in overruling the plea interposed by the defendant in this case.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with instructions to sustain defendant's plea and to discharge the defendant.