[Civ. No. 137.   Fifth Dist.   May 17, 1962.]

JAMES ALVIN HUTSON, Petitioner, v. THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Jack B. Lamb and C. Ernest Rushing for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat A. Agliano, Deputy Attorney General, for Respondent and Real Party in Interest.

CONLEY, P. J.—James Alvin Hutson petitions this court for a writ of prohibition to prevent his trial for burglary on the ground that he has been once in jeopardy. ■ This procedure, if the facts justify it, is expressly approved in the case of *Cardenas* v. *Superior Court,* 56 Cal.2d 273, 275 [14 Cal.Rptr. 657, 363 P.2d 889], where it is said in the opinion written by Mr. Justice Dooling: "It is settled that where a plea of once in jeopardy is good, a writ of prohibition may issue to prevent the unnecessary expense and delay attendant upon a futile trial and appeal. (*Jackson* v. *Superior Court,* 10 Cal.2d 350, 352-353 [74 P.2d 243, 113 A.L.R. 1422].)"

It is claimed by the People that the defendant and one Freddie F. Daniels burglarized the home of Ruby Lorraine Atwood in the city of Modesto on December 23, 1961. At the preliminary examination, both of the defendants were represented by Mr. Walter C. Hancock, the public defender. Each of them was held to answer and after separate informations had been filed, the cases were consolidated for trial. In the superior court the People were represented by the district attorney, Freddie F. Daniels by Mr. Hancock, and the petitioner, James Alvin Hutson, by his present attorneys. A jury was selected and sworn. Following the completion of the People's evidence, the petitioner took the stand and testified. He was cross-examined by the district attorney, and the court then asked Mr. Hancock if he had any questions. He replied that he had, but that he first desired to discuss a matter with the court and opposing counsel in chambers.

The judge, the attorneys and an official reporter then adjourned to chambers. Mr. Hancock stated that the testimony of the petitioner surprised him in that it differed greatly

from the statement made to him by that defendant when he represented him prior to and at the preliminary examination; that he desired to cross-examine Hutson on that subject but could not ethically do so in the absence of a waiver, because he had secured the facts which would furnish the basis of the cross-examination from Mr. Hutson as his client. Mr. Rushing refused to waive the objection. The court then stated: "I don't see what to do but declare a mistrial as much as I hate to under the circumstances. I can't ask somebody else to step into the trial at this time. It's one of these chances that we take when one man starts in to represent two defendants and interviews him and then the other man gets other counsel."

Mr. Rushing said he would talk with his client, but ". . . I cannot advise my man to waive any of his rights, . . ." Mr. Rushing left the chambers to consult with petitioner; upon his return he told those present that ". . . Mr. Hutson has advised me that he absolutely will invoke the privilege, and therefore, Mr. Hancock cannot say anything against him. . . . He will not waive the privilege, Your Honor."

The court said, "Well, I see nothing to do, gentlemen, but to declare a mistrial and have this thing set again, and we'll have to appoint," and the jury was recalled and formally discharged.

The petitioner secured leave of court to add a plea of once in jeopardy to his former plea of not guilty, and thereafter he moved the trial court to dismiss the action on the ground that he had been once in jeopardy. The motion was denied, and the petition for a writ of prohibition was filed in this court.

It is a general rule that when a jury has been impaneled and sworn to try a defendant, jeopardy attaches, and the discharge of the jury when not authorized by law and in the absence of consent by the defendant is equivalent to an acquittal of the charge and constitutes former jeopardy on a subsequent trial on the same charge. (Cal. Const., art. I, § 13; U.S. Const., 5th Amend.; *Cardenas* v. *Superior Court, supra,* 56 Cal.2d 273; *People* v. *Webb,* 38 Cal. 467; *People* v. *Cage,* 48 Cal. 323 [17 Am.Rep. 436]; *Jackson* v. *Superior Court,* 10 Cal.2d 350, 352 [74 P.2d 243, 113 A.L.R. 1422]; *Coumas* v. *Superior Court,* 31 Cal.2d 682 [192 P.2d 449]; *Rodriguez* v. *Superior Court,* 27 Cal.2d 500 [165 P.2d 1].)

It is conceded that the defendant Hutson did not move for

a mistrial or expressly consent to it. The Attorney General seeks to justify the court's action on two grounds: first, that the jury was discharged because of necessity and under circumstances that did not constitute jeopardy; and second, that the defendant Hutson gave implied consent to the granting of the mistrial and that, therefore, he cannot complain.

With respect to the first ground of claimed justification, reference is made to the provisions of section 1141 of the Penal Code: "In all cases where a jury is discharged or prevented from giving a verdict by reason of an accident or other cause, except where the defendant is discharged during the progress of the trial, or after the cause is submitted to them, the cause may be again tried."

As examples of the application of this section it has been held that if a defendant effects an escape from custody during trial, the discharge of the jury does not warrant a plea of once in jeopardy at a later trial (*People* v. *Higgins,* 59 Cal. 357), and that if a juror becomes critically ill during the trial, the discharge of the jury without the consent of the defendant does not constitute jeopardy. (*People* v. *Ross,* 85 Cal. 383 [24 P. 789].) Furthermore, if "for good cause" a juror is discharged during a trial, and the other members of the jury are dismissed because the required 12 are no longer in the box, this does not furnish ground for a defendant's release on a plea of once in jeopardy. (*In re Devlin,* 139 Cal.App.2d 810 [294 P.2d 466].) The Attorney General also cites several federal cases which give more discretion to the courts in dismissing juries without leading to double jeopardy than do California state decisions.　 This insistence upon a relatively stricter rule in California state courts is discussed in *Cardenas* v. *Superior Court, supra,* 56 Cal.2d 273, 275, 276; there the court refers to *Gori* v. *United States,* 367 U.S. 364 [81 S.Ct. 1523, 6 L.Ed.2d 901], in which the Supreme Court of the United States held that the granting of a mistrial on the court's motion and without defendant's consent but for defendant's benefit did not place him in jeopardy as a matter of law under the Fifth Amendment. Our California Supreme Court says:

"This holding does not accord with the uniform construction placed by this court upon the jeopardy provision of the California Constitution contained in article I, section 13. [Citing cases.] As stated in *Jackson,* 10 Cal.2d at page 357: Once the jury is charged with the defendant's deliverance '[h]is jeopardy is real and he cannot be again subjected to

jeopardy unless the jury be discharged without rendering a verdict, *by his consent,* or *upon some legal necessity* resulting from physical causes *beyond the control of the court.'* (Emphasis added.)''

In the instant case there was no overweening necessity of granting the mistrial. If counsel for Hutson had objected to cross-examination by Mr. Hancock, as he gave notice in chambers that he would, the court would have had to sustain the objection, for it would have been improper for counsel to use information which he had obtained in the attorney-client relationship. (Code Civ. Proc., § 1881, subd. 2; *People* v. *Abair,* 102 Cal.App.2d 765, 771-772 [228 P.2d 336]; *People* v. *Kor,* 129 Cal.App.2d 436 [277 P.2d 94]; Canon 37, Canons of Professional Ethics of the American Bar Association; *People* v. *Kerfoot,* 184 Cal.App.2d 622, 644 [7 Cal.Rptr. 674].) At that point Mr. Hancock and his client Daniels could have asked for the appointment of another attorney; the court doubtless would have granted the request and would have continued the case so that the new attorney for Daniels could have become familiar with the antecedent proceedings and testimony. The court also could have granted a mistrial to Daniels if he had so moved; this would have permitted the court to complete the pending trial as to Hutson without further delay. We hold that there was no necessity which required the court to declare a mistrial on its own motion.

Was there implied consent to the mistrial by the petitioner? We believe not.

Silence on the part of a defendant in the circumstances could not properly be construed as consent. (*Himmelfarb* v. *United States,* 175 F.2d 924, 931; *State* v. *Richardson,* 47 S.C. 166 [25 S.E. 220, 222, 35 L.R.A. 238].)

In support of the theory of implied consent the People cite only *People* v. *Kelly,* 132 Cal.App. 118, 122-124 [22 P.2d 526]. There, the attorney for the defendant stated to the court that it should either order a mistrial or give an instructed verdict. The opinion states with respect to the defendant's counsel:

''In effect he was arguing that while the case must result in either a mistrial or an instructed verdict, an instructed verdict was to be preferred as saving expense to the county. His statement indicates specifically an expectation that such a third trial, if ordered, would be upon the same point that had just arisen in that trial and which had apparently arisen

once before, and not upon the issue of former jeopardy now relied upon.

"  .    .    .    .    .    .    .    .    .    .

"It may be further observed that the statements made were such as would naturally lead the court to believe that the defendant consented to a mistrial order. Had nothing been said in this regard, the court could have protected the rights of the People by proceeding with the case. . . . Thus viewed, we think the statements made were such as to justify the court in believing that an order of mistrial was consented to. Under such circumstances an appellant may not insist upon such a construction of statements made by him as would only tend to show that the court was misled thereby."

In the present case, as we have seen, the defendant Hutson was not personally present in the court chambers during the proceedings. When his attorney went out to see him and came back to report to the court and counsel it was said that the defendant would not waive his rights, particularly with respect to permitting counsel for the codefendant Daniels to examine him; it was the only message brought from the defendant to the group.

The Attorney General argues that the statement by counsel for the petitioner, "I'm not sure whether or not I will want to represent him again, . . ." the further statement, "Well, Your Honor, I'm going to object to any statement being made on this because I think it would be highly prejudicial against my client," and the additional comment to the district attorney, "It's been a mistrial. You can file a new complaint," show implied consent to the mistrial. We think that these informal comments made in chambers by counsel after the court had stated positively that it would grant a mistrial cannot be construed to be a consent.

Our conclusion is supported by the fact that Hutson was not present during the proceedings in the judge's chambers and was not asked personally whether he would consent to a declaration of mistrial. (See *People* v. *Baillie*, 133 Cal.App. 508, 512 [24 P.2d 528].) As is pointed out in the *Himmelfarb* case, *supra*, 175 F.2d 924, this action by the court involved a basic constitutional right of the defendant. While it is true that a formal motion for a mistrial made by defendant through his counsel is construed as consent to a mistrial on the defendant's part, still that is not the situation here. No such motion was made. The court declared on its own initiative that a mistrial would be ordered. It would seem

that with such an important right involved the defendant personally should have been given an opportunity to consent to the procedure or specifically to refuse. And we do not think it would be just under the circumstances to construe the wholly informal remarks of defendant's counsel after the court had definitely announced its purpose as a consent to the granting of a mistrial.

It is ordered that a peremptory writ of prohibition issue as prayed.

Brown, J., and Stone, P., concurred.

A petition for a rehearing was denied June 14, 1962, and the petition of respondent and the real party in interest for a hearing by the Supreme Court was denied July 11, 1962.