[No. B238486. Second Dist., Div. Three. May 22, 2012.]

JOSEPH CARL STANLEY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

268

**Counsel**

Ronald L. Brown, Public Defender, Michael Pentz and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

Steve Cooley, District Attorney, Phyllis Asayama, Brentford Ferreira and Serena R. Murillo, Deputy District Attorneys, for Real Party in Interest.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Scott A. Taryle, Deputy Attorneys General, as Amicus Curiae on behalf of Real Party in Interest.

**OPINION**

**CROSKEY, J.**—In *Curry v. Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345] (*Curry*), our Supreme Court held that "mere silence" in the face of the proposed discharge of a jury does not constitute consent to the dismissal of the jury, and the subsequent mistrial, so as to defeat a defense assertion of double jeopardy. In this case, defense counsel participated in discussions which led the trial court to believe that counsel had consented to the procedure which ultimately resulted in the dismissal of the jury, prior to opening statements. When defendant subsequently moved for dismissal, asserting double jeopardy, the trial court held that defense counsel's conduct constituted implied consent, and denied the motion. We conclude that the record supports the trial court's conclusion; *Curry* has no application when counsel's conduct goes beyond "mere silence," and his words and actions reasonably lead the court to believe he consents. We therefore will deny defendant's petition for a writ of prohibition.

Very shortly after the jury and four alternates were sworn in a double-murder case, a number of jurors asserted reasons why they needed to be excused from service. One juror revealed a previously undisclosed bias, and was dismissed. An alternate juror revealed a previously undisclosed childcare obligation, and was dismissed at the request of defendant. Another juror's fiancée had broken her ankle and required the juror's constant attention. The record does not reflect whether this juror was actually dismissed, but it appears that the trial court and counsel assumed that he had been excused. A fourth juror asserted that he had contracted contagious conjunctivitis (pink-eye), and was under doctor's orders to stay home for two days. The trial court posited the question as to whether it should wait for this juror to get well, and a discussion was held with counsel. Both the prosecutor and the trial court believed that the result of the conversation was an agreement that the trial would not proceed unless there was *at least* one alternate. As a single alternate would be preserved if the trial were continued in order to retain the juror with pinkeye, the trial court proposed to counsel that it would ask the remaining jurors if they all would still be able to serve if the commencement of the trial were delayed for two days. The trial court expressed the view that if any other jurors asserted an inability to serve if the trial were continued, the court would grant a mistrial and dismiss the jury. Hearing no objection, the trial court proceeded with that course of action. A fifth juror then expressed concern, stating that he had "had a heart attack." The trial court held another conference with counsel and, relying on what it believed to be the agreement it had previously reached with counsel, and hearing no objection, dismissed the jury and declared a mistrial. A new trial date was set.

Thereafter, defendant added a plea of once in jeopardy. He moved to dismiss the criminal charges against him on the ground of double jeopardy, arguing that there was no legal necessity for, or consent to, the mistrial. As already noted, the trial court denied the motion on the basis that defendant had impliedly consented to the dismissal of the jury and the resulting mistrial. Defendant sought review by petition for writ of prohibition. We issued an order to show cause and now will deny the petition. A careful review of the record reflects that the actions and statements made by defense counsel during the discussions with the trial court regarding the reduction in the number of available jurors, including, but not limited to, counsel's failure to object to the court's proposed plan of action, were sufficient to cause the court to harbor a reasonable belief that counsel had consented thereto. As we explain in this opinion, this was sufficient, under all of the circumstances, to constitute implied consent.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2009, defendant was charged by information with two counts of murder, in addition to other offenses. It was alleged that he had suffered four prior serious or violent felony convictions or juvenile adjudications. He entered a plea of not guilty. The prosecution elected not to seek the death penalty.

Jury selection commenced on November 3, 2011. Prior to the commencement of voir dire, defense counsel mentioned that a defense expert witness would be unavailable from November 16 through the middle of December. He requested permission to take the witness out of order if the prosecution had not finished its case-in-chief by November 15. Both the prosecutor and the trial court agreed to that request.

Jury selection took place on November 3 and November 4, 2011. Once the panel was selected, the trial court inquired of counsel as to the number of alternate jurors sought. Defense counsel stated, "You know, because we are butting up against the holidays, I am thinking four." The prosecutor and the trial court agreed. Counsel then stipulated to four alternate jurors. The trial court swore the jury and alternates. After an introductory instruction regarding conduct of independent research or discussion about the case, the trial court excused the jury until Monday, November 7, 2011.

Shortly thereafter, Juror 3 asked to speak with the court. He indicated that he had previously worked as a victim's advocate for the city attorney's office. He stated, "I think it is highly unlikely that I will be fair and impartial as a juror." The juror was excused;[1] defendant concedes that it was proper to dismiss Juror 3.

Thus, when the matter reconvened on Monday, November 7, it was necessary to select an alternate to replace Juror 3, leaving only three alternates. However, some additional issues had arisen with other jurors.[2] The trial court, with counsel present, therefore called in several of the jurors individually.

The first juror was Juror 4. He explained that his fiancée, with whom he lived, had slipped on a wet towel and broken her ankle. They went to the emergency room "last night." The juror's fiancée was using crutches and had a hard time getting up and down the stairs. The juror believed someone had to be home with his fiancée to look after her, and asked to be excused in order to do so.[3] At sidebar, the trial court indicated that it did not know why a grown woman could not stay downstairs during the day, but that it could not pursue that line of inquiry without going into "an attack mode" and questioning the juror about the configuration of his house, which the court was reluctant to do. The trial court stated to counsel, "I see no choice unless you have something better"—the comment apparently referred to excusing the juror. Defense counsel understood the trial court's statement as such, replying, "Well, the only thing that is starting to worry me is we haven't begun the trial." The trial court responded, "It gets worse, trust me. I'm just worried about [Juror] 4 at this point." Defense counsel agreed that the trial court should not question the juror about the configuration of his house, but asked the court to inquire if there was any alternative to Juror 4 being the caretaker for his fiancée. The trial court inquired; Juror 4 responded, "Not really. We live alone. It's just the two of us. She's afraid to walk around without the, with the crutches." The trial court directed Juror 4 to wait in the hallway. However, it appears that the trial court intended to excuse the juror. When the trial court had sought alternatives to dismissing the juror, defense counsel had requested only that the juror be asked if there was any alternative to him

---

[1] The court made a preliminary finding that the juror's statements were not credible, and set a contempt hearing.

[2] When the court stated that there were issues with other jurors, defense counsel stated, "This went too fast." The court replied, "I don't think so. I think what I didn't take into consideration—nothing." While the subject of these comments is unclear, it appears that defense counsel and the trial court both sensed that there might be problems keeping enough jurors on the jury.

[3] Juror 4 represented that "the cleaning lady" was with his fiancée that day.

being the sole caretaker. The question was posed to the juror and he had responded that there was not.[4]

The next juror with a problem was an alternate, Juror 32. She had previously stated in voir dire that she had a three-year-old child. Now, she stated that she was the only person who could care for the child from 9:00 a.m. to 2:00 p.m., while her husband was at work. The trial court did not doubt the juror's representation, but questioned why she did not raise the issue when questioned earlier. After hearing the juror's explanation, the trial court concluded that the juror had made "a conscious decision to sit throughout this entire jury selection process, hoping that they won't pick [her] and so if [she was] not picked, then [she would] fulfill [her] jury service for this year and everything [would] be okay." Concluding that the juror had gambled and lost, the trial court stated that she was required to remain on the panel. However, defense counsel later requested that the juror be excused and the court granted the request.

The final juror with an issue for the court was Juror 6. He presented the trial court with a piece of paper on Kaiser Permanente letterhead, entitled "Temporary Jury Duty Release." The document stated, "This patient is placed on temporary jury duty release from November 6 through November 8th. Prognosis good. Patient is home bound or bed bound." When the trial court asked for an explanation, the juror stated, "Basically I have a case of [pinkeye], and my eye has been bothering me so I went to the doctor on Sunday, and she gave me medication for it, and she said it's really contagious and I should stay home." A sidebar conference followed.

The trial court stated, "With this man, all I can say is we put it over to the 9th, if I can be assured he would come back on the 9th. At any rate, we can do that. If that's not what you want to do, we'll move on that, too." The trial court then stated, "If you don't want to wait for this, this person is gone also . . . . "[5] Subsequently, the trial court stated, "This person, I haven't heard a decision on him yet, and we are down three people at this point."[6]

---

[4] As already noted, the record strongly suggests that the court intended to excuse this juror, but does not reflect that it actually did so.

[5] The trial court's full statement was, "If you don't want to wait for this, this person is gone also, and then you have maybe one left over." The "maybe one left over" was perhaps a reference to Juror 4, the juror who had to care for his fiancée. Jurors 3 and 32 were already excused, and the trial court's statement presumed not waiting for Juror 6 and excusing him as well. Indeed, in response to the trial court's statement, the prosecutor said, "I don't think we have any," in apparent reference to her belief that Juror 4 would be excused.

[6] This statement appeared to agree with the prosecutor's earlier understanding (see fn. 5, ante) that Juror 4 would, in fact, be excused.

The trial court also proposed the following course of action: "Also what I want to say is, if we are down to no alternates, when I call them in the room before we go any farther, I'm going to say look, I don't know exactly when this will end at this point. You could be here until the last week in November. I don't know. I cannot do that. Let me know right now. If somebody raises their hand, we are done."[7] Neither counsel disagreed with this proposition. Defense counsel's[8] only response was "Right now where we are at, the *only problem* I have is making sure my expert's testimony—."[9] (Italics added.) The following colloquy then occurred:

"[The prosecutor]: I don't mind taking her testimony out of order. I think we should wait for him. I would rather have at least one alternate. That makes me uncomfortable without an alternate.

"The court: The bottom line is we are done.[10]

---

[7] The court's suggestion was not unreasonable. While extending a criminal trial an extra two days is not generally cause for concern regarding whether the jury would remain intact, it was in this case. The trial court had indicated, immediately after the jury was sworn, that it expected the evidence to go to November 18, which was the Friday prior to Thanksgiving week. If trial were delayed two days, the evidence might well go into the Tuesday before Thanksgiving (and deliberations into the day before Thanksgiving). It was certainly reasonable to assume that one or more jurors might have had prepaid travel plans for Thanksgiving week. If the jury had no alternates and the trial reached the point where it implicated prepaid Thanksgiving travel plans, the parties would *then* have to agree to a further continuance, into the last week in November, in order to preserve the jury.

[8] The reporter's transcript attributes this statement to defendant. Defense counsel represents that this is erroneous and the statement was counsel's.

[9] Defense counsel would subsequently take the position, in his declaration in support of his later motion to dismiss, that he was not clear as to what the court was saying when it indicated that, if there were no alternates left, it would inquire as to whether any juror could not serve to the end of the month. Defense counsel stated, "The reasoning behind the court's statement was not clear to me," as, the only reason in which they would be without alternates would be if Juror 6 was dismissed, but if Juror 6 was dismissed, there would be no reason for the trial to go into the last week of November. If counsel did not understand what the court was saying, he was obligated to seek clarification. By instead saying, "the only problem" he had was making certain his expert could testify, he was very clearly leading the court to believe that he agreed with everything else the court had proposed.

[10] In defense counsel's declaration in support of the motion to dismiss, defense counsel argued that certain events occurred which were not reflected in the record. As we discuss here and in footnote 11, *post*, defense counsel's after-the-fact interpretation of the record, and his assertion that certain events occurred, is unpersuasive. For example, in his declaration filed in support of defendant's motion to dismiss, defense counsel stated that, when the trial court said, "The bottom line is we are done," he interpreted this to mean that the court believed the prosecutor and defense counsel disagreed on the proper course of action as to Juror 6. We find this difficult to believe. Even if counsel disagreed as to the disposition of Juror 6, there are no circumstances under which the trial would be "done." If the trial court dismissed Juror 6, as would be necessary if defense counsel refused to agree to continue the trial to wait for Juror 6 to recover from pinkeye, there would be four dismissed jurors and a full jury of 12 would

"[The prosecutor]: I would like to keep him than not have no alternates [*sic*]. If it means waiting until the 9th, that's okay with me, and I'm letting his witness testify out of order.

"The court: All right. All right. Thank you."[11]

Clearly, it would have been the better practice for the trial court to have restated its understanding of the parties' agreement and expressly elicited their consent to it on the record. Nonetheless, it seems clear that the trial court understood that (1) both parties agreed to the court's proposed procedure that, if they were down to no alternates, the court would ask if there were any additional jurors who would be unable to serve if the trial were delayed for two days, and to dismiss the jury if any jurors indicated they were so unable and (2) the parties also agreed that the trial would not proceed without at least one alternate. Thus, the second agreement modified the first.

---

remain. Moreover, the record indicates that, when the trial court said, "The bottom line is we are done," defense counsel had already stated that his *only* problem with continuing the trial would be taking his expert out of order, and the prosecutor had already stated that she "didn't mind" taking the testimony out of order and that she thought they "should wait for" Juror 6 to recover. It seems rather more likely that the trial court's statement, "The bottom line is we are done," was simply a continuation of the court's immediately previous statement that he intended to ask the jurors if they had problems with the trial running into the last week of November, and if anyone raised their hand indicating that they could not serve, "we are done."

[11] In his declaration filed in support of defendant's motion to dismiss, defense counsel states that the following course of events occurred. After the court said, "The bottom line is we are done," counsel left the sidebar area. As defense counsel believed the court's statement meant that the court thought there was no agreement as to Juror 6, defense counsel then asked for leave to address the court and returned to sidebar, where the prosecutor set forth their agreement to wait for the juror and allow the defense expert to testify out of order. Preliminarily, the record gives no indication that counsel left sidebar, asked to reapproach, and returned to the sidebar. More than that, if *defense counsel* had asked for leave to address the court, one might expect the record to reflect that defense counsel subsequently addressed the court; yet the record shows that the prosecutor was the only one to speak once the parties purportedly returned to sidebar. Furthermore, if defense counsel's concern was that the trial court did not realize that the parties had reached *an agreement* as to Juror 6, there is no reason why the prosecutor's restatement of *her own* position would have been sufficient without some indication from defense counsel *that he agreed with it as well*. While we have substantial doubts regarding defense counsel's after-the-fact interpretation of the record, the key point we take away from counsel's declaration is that defense counsel *believed* there was an agreement with the prosecutor and that the court agreed to it as well. This is critical because, as we discuss in the body of the opinion, the prosecutor's statement of the terms of her understanding included her desire that the trial not proceed without an alternate. As defense counsel never indicated to the court any disagreement with that statement, there was no possible basis on which the court could have inferred that defense counsel agreed with that part of the prosecutor's statement relating to continuing the trial to retain Juror 6, but disagreed with that part which related to not proceeding without an alternate.

As it was necessary to continue the trial in order to retain one alternate, the court proceeded to ask the jurors if any of them would be unable to serve.[12]

The trial court then called the jury in, and made the following statement to the remaining jurors: "Ladies and gentlemen, I have to gauge my words very carefully. An incredible course of events has occurred since you stood up and were sworn in last Friday afternoon. [¶] Juror number 3 immediately after that swearing in and after you left, came up with some reasons all of a sudden as to why he could not serve and be a fair and impartial juror. I will have a contempt hearing with him this Wednesday. [¶] Another one of your number's significant other had an accident over the weekend, which will now require his constant attention.[13] [¶] Another of your group all of a sudden we find has a three-year-old daughter who has no one to look after her for the period of time in which she will be on jury duty in this case. That was not made known. [¶] And lastly, another of your number has a condition that requires that we basically would, in essence, have to shut down until the 9th, which would be Wednesday. We would resume Wednesday. [¶] But here's where we are, and I'm going to leave it totally up to you because it is very critical. Sometimes I think I'm talking and I'm making sense and people look at me like they understand me and it turns out it was not true. [¶] Again, I want you to clearly understand if we go forward, this matter won't even start again until Wednesday. But secondly, I'm making no assurances, assurances about anything at this point. And all I can tell you is you have my individual pledge as a bench officer to use your time as efficiently as possible. [¶] Now here's where we are. Come back on the 9th. It will be a full day on the 9th. The 10th would be a half day. You come in the morning on the 10th. You will not come in the afternoon. [¶] The 11th is a court holiday. The following week would be all the way through. The 21st to the 23rd would be all the way through.[14] I'm not sure where we will end up so I'm letting you know that flat out front. [¶] Here's the issue in a nutshell. Because we are so short of jurors, I'm not even going to start this if somebody tells me you can't do it. I don't want to invest the time and bring in all [the] witnesses and do what we have to do if somebody believes they can't do this. All you need to do is raise your hand, and I will tell them that it's done at this point because I

---

[12] It is noteworthy that at no point in the court's discussion with the jurors did either counsel object and indicate this procedure was not, in fact, the procedure to which they had agreed. As we shall discuss, defendant's argument on appeal is based on authority that a defendant need not expressly object to the dismissal of a jury in order to assert the defense of double jeopardy. However, at this point in the proceedings, the issue was not whether the court would dismiss the jury, but whether it would proceed as· agreed in the event the jury was down to its last alternate. The record strongly implies that defense counsel agreed with the court's procedure. Even if defense counsel did not agree with it, he allowed the court to believe that he did.

[13] The fact that the trial court expressed Juror 4's situation in these terms confirms that the court intended to excuse Juror 4.

[14] The 24th was Thanksgiving Day.

cannot risk doing this. [¶] I see your hand. I will talk to you.[15] All of a sudden—that's what is really funny with people like you. If you had done that when we were doing voir dire, we wouldn't be in this position. You have no problem now, but when you thought you would not be selected, it was okay. As soon as you got selected, then you are telling me, no, no, no, no, no. That's all I ask. That's all I ever ask, just tell me what your condition is. When people hide that, it puts us in a bad, bad, bad place. [¶] Again, please raise your hand, if you cannot do it."

Juror 2 raised his hand, and the court asked, "Number 2, you cannot do it?" Juror 2 responded, "I don't think so because I had a heart attack. I called up the doctor, seen a doctor." As the court had previously stated that the case would be over if a juror expressed an inability to serve, the trial court did not further question Juror 2. Thus, it was not known when the juror had suffered the heart attack, his doctor's recommendation, and whether the heart attack impacted his ability to serve *at all* or somehow limited only his ability to serve if the trial went longer than originally planned.[16]

In any event, the trial court held another sidebar conference with counsel, in which the court stated, "I believe they win."[17] Neither counsel expressed disagreement with the court's expression of defeat.[18] The trial court then dismissed the jury and declared a mistrial. In explaining this ruling, the trial court stated, "We simply do not have qualified jurors who can serve, and as a result, it was agreed that if we would have had only 12 jurors, we would start over, and, in addition, I believe it was number 2 that made it fairly clear in all probability we would not have even one alternate before this was over with." At no point did either counsel indicate any disagreement with the trial court's statement, "it was agreed that if we would have had only 12 jurors, we would start over . . . ." Defense counsel, who now asserts there was no such agreement, stated, in his declaration in support of the motion to dismiss, "I did not hear his honor make this comment during the court proceedings as I was conferring with [defendant] at counsel table."

---

[15] As the record subsequently discloses, this was likely a reference to Juror 2, with whom the trial court then spoke.

[16] For example, a medical procedure for the juror might have been scheduled for one of the extended trial dates.

[17] The court's frustration and resignation are certainly understandable. The court had very likely expected that the juror who raised his hand would state an inability to serve during Thanksgiving week due to holiday travel plans; that the juror had suffered *a heart attack* was clearly viewed by the court as, to put it idiomatically, "the last straw."

[18] Defense counsel, in his declaration in support of the motion to dismiss, stated that he "had no idea" what the court meant by this statement. Defense counsel should have sought clarification, rather than allow the trial court to believe that he understood the court's statement and agreed with it.

The trial court set the matter for a new trial date. Defense counsel took part in this conversation, and at no time suggested that the mistrial had been declared without consent and a new trial would therefore be barred by principles of double jeopardy.

Approximately one month later, defendant added a plea of once in jeopardy and moved to dismiss the prosecution. Defendant argued that there was neither a legal necessity for, nor consent to, the declaration of mistrial.

The prosecutor opposed the motion on the basis of implied consent. The prosecutor noted that (1) when the trial court proposed its plan to ask the jurors if any of them had a problem serving into the last week in November, and to end the proceedings if any of them answered in the affirmative, defense counsel made no objection to the court's proposal;[19] (2) when the prosecution indicated that it wanted to preserve at least one alternate, even if it meant taking defendant's expert out of order, this, too, became part of the agreement; and (3) after the trial court dismissed the jury, it placed on the record that the parties had agreed to start over if they did not have at least one alternate. The prosecutor argued that defense counsel's entire course of conduct led the trial court to believe that he had consented to the course of action which led to the mistrial.[20]

The trial court agreed with the prosecution and denied the motion. The court noted that, prior to receiving the prosecution's opposition, it had planned out a lengthy ruling, but concluded that the prosecution had argued exactly what the court had intended to hold. At the hearing, the trial court explained, "That particular jury panel was, for lack of a better term, a perfect storm, so to speak, in that once the panel has been sworn in, then a whole series of people came up with excuses. And all I can tell you is a couple of things about that, and that is I view my job to do justice as best as possible." The court stated that it had explained to counsel how it had intended to proceed, and there had been no objection. The trial court stated, "I believe that any reading of the transcript shows clearly the court left options open. If there was any problem whatsoever, I would have expected to have some opposition to it and again the court stated what it was going to do and again the court heard no opposition by either party." The court ultimately concluded, "So I think it's reasonable to conclude, under the circumstances, that there was no objection to the court's perceived manner in handling this case. I tell you what. As a result of this matter, we all learned, and I think the better

---

[19] As we discussed above, defense counsel did more than make no objection; he stated that his "only problem" was making certain his expert could testify.

[20] The prosecution argued, "Although the defense has no affirmative duty to object, it cannot mislead the judge into believing there was mutual agreement not to go forward if we did not have at least one alternate and then claim it did not consent to the mistrial."

practice in the future for this court, is I have to dot every 'i' and cross every 't.' [¶] Again, I believe one thing was happening. Again, I think under these circumstances, there is an implied consent so I deny your motion."

Defendant filed a timely petition for writ of prohibition. We issued an order to show cause,[21] and now deny the petition.

### CONTENTIONS OF THE PARTIES

Defendant contends that double jeopardy principles preclude any further prosecution of the charges against him, as the jury had been sworn but was subsequently dismissed without legal necessity or consent. The prosecution replies that defendant impliedly consented to the course of action which led to the dismissal of the jury. We requested amicus curiae briefing from the Attorney General, who argues that legal necessity required the mistrial, in that five jurors were unable to serve. We agree, in part, with the prosecution; the record provides support for the trial court's conclusion that defendant impliedly consented to the mistrial.

### DISCUSSION

1. *Double Jeopardy Principles*

■ "The Fifth Amendment to the United States Constitution provides that '[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . .' This guarantee is applicable to the states through the Fourteenth Amendment. [Citation.] Similarly, article I, section 15, of the California Constitution provides: 'Persons may not twice be put in jeopardy for the same offense . . . .' " (*People v. Saunders* (1993) 5 Cal.4th 580, 592–593 [20 Cal.Rptr.2d 638, 853 P.2d 1093].)

The policies and protections underlying or afforded by double jeopardy principles include: "(1) protecting the defendant from being subjected to the embarrassment, expense, ordeal, and anxiety of repeated trials, (2) preserving the finality of judgments, (3) precluding the government from retrying the

---

[21] In connection with his reply in support of the petition, defendant included a declaration of counsel, setting forth, among other things, a post-writ-petition discussion with the prosecutor regarding their recollection of key events. The prosecutor responded with a declaration disagreeing with defense counsel's declaration in several respects, and defense counsel submitted yet another declaration and requested this court resolve the disputed factual issues. We deny the request and disregard all of the supplemental declarations; the only declarations relevant to the disposition of this writ are those which were before the trial court when it ruled on defendant's motion to dismiss. (*People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1173, fn. 5 [17 Cal.Rptr.2d 815, 847 P.2d 1031].)

defendant armed with new evidence and knowledge of defense tactics, (4) recognizing the defendant's right to have trial completed by a particular tribunal, and (5) precluding multiple punishment for the same offense. [Citations.]" (*People v. Hernandez* (2003) 30 Cal.4th 1, 8 [131 Cal.Rptr.2d 514, 64 P.3d 800].) In this case, as the trial had not yet begun, the only policy implicated is protection of the defendant's right to have trial completed by a particular tribunal. Under that policy, once banded together, a jury should not be discharged until it has completed its solemn task of announcing a verdict. (*Id.* at p. 9.)

■ Jeopardy attaches once the jury and the alternates are sworn. (*People v. Hernandez, supra,* 30 Cal.4th at p. 8.) Granting an unnecessary mistrial after jeopardy has attached precludes retrial. (*Ibid.*) Retrial, however, is not barred if the defendant consented to the mistrial or legal necessity required it. (*Curry, supra,* 2 Cal.3d at p. 712.) In this case, we are concerned only with the issue of consent.[22]

### 2. Implied Consent

■ California law is clear that a defendant[23] can impliedly consent to the declaration of a mistrial. (*People v. Boyd* (1972) 22 Cal.App.3d 714, 717 [99 Cal.Rptr. 553].) For example, if the defendant affirmatively moves for a

---

[22] As already noted, we requested amicus curiae briefing from the Attorney General on the legal necessity argument. While we need not reach the argument, as we resolve this writ petition on the consent issue, we have concerns which would have to be addressed in order for the legal necessity argument to succeed. In order for there to have been a legal necessity for the mistrial, the trial court would had to have properly dismissed *five* jurors—that is, the number of available jurors would have had to have been reduced to 11. While arguments can be made that the court dismissed, or very clearly expressed its intention to dismiss, three jurors (Juror 3, who said he could not be fair; Juror 32, with the childcare obligation; and Juror 4, whose fiancée broke her ankle), we are not at all convinced that the record indicates that the court formally dismissed Juror 6 (pinkeye) or Juror 2 (heart attack). Even if we were to conclude that the trial court had dismissed all five jurors, we would then have to review the manner in which the trial court conducted its inquiry of the dismissed jurors. (*People v. Fuiava* (2012) 53 Cal.4th 622, 712 [137 Cal.Rptr.3d 147, 269 P.3d 568].) As the court's questioning of Juror 2 was cursory at best, we would return to the issue of whether the parties had agreed that Juror 2 would be dismissed without further questioning. It appears to us, however, that the record indicates the agreement between the parties was an agreement for dismissal of the entire panel, not simply Juror 2. We therefore elect to consider the parties' agreement in terms of an implied consent to the mistrial itself, rather than an agreement to the dismissal of the fifth juror, which created a legal necessity for the mistrial.

[23] The defendant's implied consent is often expressed through statements of the defendant's counsel. As we discuss below, there was, initially, some dispute in the law as to whether a defendant must personally consent to a mistrial and only a request by counsel *inconsistent* with a lack of consent to a mistrial (such as a motion for a mistrial) would be sufficient to constitute consent. Except where we are expressly discussing the development of this law, our references to a "defendant's" implied consent should be read to include the implied consent of the defendant's counsel.

mistrial, or joins in such a motion, the defendant will be held to have consented. (*Ibid.*) Similarly, if the defendant requests a lengthy continuance, and agrees that the case should be assigned back to the criminal department for reassignment, consent will be inferred. (*People v. Ramirez* (1972) 27 Cal.App.3d 660, 670 [104 Cal.Rptr. 102].) In contrast, a defendant's request that a court look into possible jury misconduct is not, standing alone, sufficient to justify a finding of implied consent to a subsequent declaration of mistrial as a result of that investigation. (*People v. Compton* (1971) 6 Cal.3d 55, 62 [98 Cal.Rptr. 217, 490 P.2d 537].) In short, if the defendant's conduct " ' "clearly evidences consent," ' " consent will be implied. (*People v. Boyd, supra*, 22 Cal.App.3d at p. 717.)

### 3. *Silence as Consent*

There is a split in the law, among various states and federal circuits, as to whether a defendant's silence may constitute consent to a declaration of mistrial. (Annot., What constitutes accused's consent to court's discharge of jury or to grant of state's motion for mistrial which will constitute waiver of former jeopardy plea (1959) 63 A.L.R.2d 782, §§ 5[a], [b], and cases cited.) California is considered to be aligned with those jurisdictions which do not permit silence to constitute consent, largely due to the Supreme Court's decision in *Curry*. Other states and circuits, however, disagree. (See, e.g., *U.S. v. Lara-Ramirez* (1st Cir. 2008) 519 F.3d 76, 83 ["Consent may sometimes 'be implied from a defendant's acts or failures to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so.' "]; *U.S. v. El-Mezain* (5th Cir. 2011) 664 F.3d 467, 559 [" 'If a defendant does not timely and explicitly object to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding.' "]; *U.S. v. Gilmore* (7th Cir. 2006) 454 F.3d 725, 729 [stating, "in this Circuit a defendant who fails to object to a mistrial gives his or her implied consent to it"]; *In re Marte v. Berkman* (2011) 16 N.Y.3d 874 [925 N.Y.S.2d 388, 390, 949 N.E.2d 479] [A party cannot remain quiet when the court suggests a mistrial, "leaving the false impression of acquiescence even while anticipating a subsequent objection. If this were permissible, attorneys could—by their silence—lull the court into taking actions that could not later be undone."].)

■ As noted above, in California, the courts have taken the position that silence alone cannot constitute consent to a mistrial. However, as we now discuss, the legal underpinnings of the cases setting forth that proposition no longer exist, calling into question the scope and extent of *Curry*'s application. Moreover, the facts at issue in *Curry* and its progeny generally involve silence following a statement expressly rejecting the idea of a mistrial or seeking a lesser remedy. In contrast, the facts at issue in the instant case

involve silence following a lengthy discussion in which counsel agreed to the procedure followed as the facts evolved. As we now explain, it is our view that, where, under all of the facts and circumstances, defense counsel leads the trial court to believe that counsel consents to a procedure which ultimately results in the declaration of a mistrial, the defendant cannot properly rely on *Curry* to argue that counsel's ultimate silence at the moment the mistrial is declared should be interpreted as a lack of consent.

### 4. *Silence as Consent in California*

In *Curry*, our Supreme Court stated, "When a trial court proposes to discharge a jury without legal necessity therefor, the defendant is under no duty to object in order to claim the protection of the constitutional guarantee, and his mere silence in the face of an ensuing discharge cannot be deemed a waiver." (*Curry, supra*, 2 Cal.3d at p. 713.) The Supreme Court did not support this proposition with any analysis; instead, it simply relied on three prior opinions: *Mitchell v. Superior Court* (1962) 207 Cal.App.2d 643 [24 Cal.Rptr. 671] (*Mitchell*), *Hutson v. Superior Court* (1962) 203 Cal.App.2d 687 [21 Cal.Rptr. 753] (*Hutson*), and *People v. Valenti* (1957) 49 Cal.2d 199 [316 P.2d 633] (*Valenti*).[24] We therefore turn to those opinions, in order to understand the basis on which California appears to have adopted the rule that mere silence cannot constitute consent to the discharge of a jury.

#### a. *Mitchell*

In *Mitchell*, the trial judge dismissed the jury after a few hours of deliberations, on the theory that it was preferable to dismiss the jury than sequester it for the night.[25] (*Mitchell, supra*, 207 Cal.App.2d at pp. 645–646.) "It does not appear from the record that either counsel had anything to say for or against the discharge of the jury or that defendant or his counsel in any way manifested consent thereto." (*Id.* at p. 646.) In determining whether the jury was properly dismissed, the Court of Appeal turned to Penal Code section 1140, which provides, "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, *unless by consent of both parties, entered upon the minutes*, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable

---

[24] The *Valenti* case was cited in *Curry* with a "cf." As we shall discuss, it provides little authority for the proposition for which it was cited.

[25] In fact, the judge who had presided over the trial was unavailable, so had left word for a different judge to dismiss the jury if they were unable to reach a verdict at the end of the first day of deliberations. The second judge did not exercise his own discretion, but simply dismissed the jury at the instruction of the first judge. (*Mitchell, supra*, 207 Cal.App.2d at p. 646.)

probability that the jury can agree." (Italics added.) In *Mitchell*, there was no consent recorded in the minutes. Thus, *Mitchell* stands for the straightforward proposition that, *when a jury is discharged after the cause has been submitted to them*, any consent to the discharge must appear in the minutes, as provided by Penal Code section 1140. It does not, however, provide support for the general proposition that, when dismissing a jury to whom the case has not yet been submitted, a defendant's silence cannot constitute consent.

### b. *Hutson*

*Hutson* did not involve the discharge of the jury after the case had been presented to it, so Penal Code section 1140 did not apply. Instead, *Hutson* was concerned with a problem which arose *during* trial. Hutson and a codefendant had been jointly represented by counsel at the preliminary hearing. At trial, Hutson had new counsel, but the codefendant was represented by the same attorney who had represented both defendants at the preliminary hearing. When the codefendant's counsel sought to cross-examine Hutson on representations learned by counsel while counsel had been representing him, Hutson refused to waive the attorney-client privilege. The trial court stated that, under the circumstances, it saw no other choice but to declare a mistrial. The mistrial was declared, and Hutson subsequently asserted once in jeopardy. (*Hutson, supra*, 203 Cal.App.2d at p. 689.) When considering whether Hutson had impliedly consented to the mistrial, the Court of Appeal stated, "Silence on the part of a defendant in the circumstances could not properly be construed as consent." (*Id.* at p. 691.) For this proposition, the *Hutson* court cited two non-California authorities, which we discuss below.

The *Hutson* court went on to state: "Our conclusion is supported by the fact that Hutson was not present during the proceedings in the judge's chambers [(where the potential mistrial was discussed)] and was not asked personally whether he would consent to a declaration of mistrial. [Citation.] As is pointed out in [citation], this action by the court involved a basic constitutional right of the defendant. While it is true that a formal motion for a mistrial made by defendant through his counsel is construed as consent to a mistrial on the defendant's part, still that is not the situation here. No such motion was made. The court declared on its own initiative that a mistrial would be ordered. It would seem that with such an important right involved[,] the defendant personally should have been given an opportunity to consent to the procedure or specifically to refuse."[26] (*Hutson, supra*, 203 Cal.App.2d at pp. 692–693.)

---

[26] The court also concluded that comments made by defense counsel *after* the trial court had positively indicated it would grant a mistrial could not be construed as a consent. (*Hutson, supra*, 203 Cal.App.2d at p. 692.)

Thus, *Hutson* relied on three things—two cases and the proposition that a defendant should *personally* be given the opportunity to consent (or refuse to consent) to a mistrial. We examine each of these in turn.

First, as support for the proposition that "[s]ilence on the part of a defendant in the circumstances could not properly be construed as consent," the *Hutson* court cited *Himmelfarb v. U.S.* (9th Cir. 1949) 175 F.2d 924. (*Hutson, supra,* 203 Cal.App.2d at p. 691.) In *Himmelfarb*, the Ninth Circuit stated, "[t]he mere silence of an accused or his failure to object or to protest a discharge of the jury cannot amount to a waiver of this immunity." (*Himmelfarb, supra,* 175 F.2d at p. 931, fn. 1.) It also stated, "it is plain that no stipulation of counsel waiving his client's constitutional right could be effective without the client's specific assent." (*Id.* at p. 931.) Yet neither of these propositions are still the law in the Ninth Circuit. "The dictum of *Himmelfarb* [citation], that even if counsel has consented a defendant must also personally give consent to waive his double jeopardy right, and that such consent will not be presumed from his silence, is no longer valid law. [Citations.]" (*U.S. v. Smith* (9th Cir. 1980) 621 F.2d 350, 352, fn. 3.)

Second, for the proposition that the silence of a defendant cannot be construed as consent, the *Hutson* court also relied on *State v. Richardson* (1896) 47 S.C. 166 [25 S.E. 220], a South Carolina case in which the prosecutor moved to withdraw the case from the jury when the prosecutor discovered that its second witness was missing. The defendant did not object, and the case was subsequently retried. The South Carolina Supreme Court concluded that the defendant's silence did not constitute consent, stating: "It is true that it is stated in the 'case' that when the solicitor moved to withdraw the case from the jury, no objection was made by the prisoner; but it also appears in the 'case' that the prisoner was not at that time represented by counsel, and it would be a harsh rule to hold that defendant consented to a withdrawal of the case from the jury simply because he interposed no objection, which, possibly, he did not know he had a right to do. Besides, consent is active, while not objecting is merely passive. The old adage, 'Silence gives consent,' is not true in law; for there it only applies where there is some duty or obligation to speak. [Citations.] If it had appeared in the 'case,' as it does not, that the prisoner was asked whether he objected to the motion to withdraw the case from the jury, and he had said 'No,' or had even remained silent, then the result would have been different. As it was, however, we think it would be going too far to hold that he consented to a withdrawal of the case." (*Id.,* 25 S.E. at p. 222.)

Third, *Hutson* relied on the proposition that protection against double jeopardy is such an important right that a defendant must personally waive it for any waiver to be valid. The validity of this proposition was not directly

addressed in California until 1983. In *People v. Moore* (1983) 140 Cal.App.3d 508, 511 [189 Cal.Rptr. 487], the court held, contrary to *Hutson*'s assumption, that "the right of the defendant to request a mistrial or proceed to a conclusion with the same jury, though a fundamental one, is one that should and can properly be exercised by experienced legal minds and is not beyond the control of counsel." (*Id.* at pp. 513–514; see *People v. Brandon* (1995) 40 Cal.App.4th 1172, 1175 [47 Cal.Rptr.2d 383] ["Although the right to request a mistrial or proceed to a conclusion with the same jury is a fundamental right, the law does not require that it be personally waived by an accused, nor does the law require that an accused be admonished concerning the nature of the right."].)

In sum, *Hutson* did conclude that silence on the part of a defendant could not properly be construed as consent to a mistrial. However, *Hutson* reached this conclusion while under the belief that the right to consent or refuse a mistrial is a right personal to the defendant which he must personally exercise—a proposition which has since been rejected by California courts. In addition, *Hutson* relied on Ninth Circuit authority which was based on the same premise; and the Ninth Circuit has since rejected that premise, as well as the conclusion that silence cannot constitute a waiver. Finally, *Hutson* relied on a South Carolina case in which the defendant was not represented by counsel, which held only that a defendant's failure to sua sponte object could not be held to be consent when the defendant might not have even known that he had the right to object.

*Hutson*, and the authority on which it relied, was concerned largely with the silence of a defendant, not the silence of the defendant's counsel. It therefore can provide little support for the proposition that the silence of *defense counsel*, in circumstances in which counsel could reasonably be expected to object to the declaration of a mistrial, cannot constitute consent.

### c. *Valenti*

In *Curry*, the Supreme Court cited to *Valenti, supra*, 49 Cal.2d 199, with a "cf." cite, in support of the proposition that "[w]hen a trial court proposes to discharge a jury without legal necessity therefor, the defendant is under no duty to object in order to claim the protection of the constitutional guarantee, and his mere silence in the face of an ensuing discharge cannot be deemed a waiver." (*Curry, supra*, 2 Cal.3d at p. 713.) Yet *Valenti* does not support that proposition; it was not a "consent" case and discussed double jeopardy only in dicta. *Valenti* considered the prosecution's attempt to appeal from the trial court's erroneous dismissal of a case in the middle of a jury trial, based on its finding that the defendant's arrest was illegal. The Supreme Court in *Valenti* concluded that the order was not appealable, and noted that, even if it were,

no reversal could be ordered as the defendant had been once in jeopardy. While the court discussed double jeopardy in general (*Valenti*, at pp. 208–209), the *Valenti* opinion does not touch on whether silence constitutes consent to a mistrial, and is therefore of little use to our analysis.

### d. *Curry*

With this understanding of the case law on which *Curry* relied, we now return to *Curry* itself. In *Curry*, the court was concerned with a situation in which a witness had testified to inadmissible matters prejudicial to each side in the case. Defense counsel sought a cautionary jury instruction, while the prosecutor was unconcerned by the testimony prejudicial to the prosecution. The trial court replied that it was unsure whether it could " 'save this trial.' " (*Curry, supra*, 2 Cal.3d at p. 712.) The trial court called a recess and, upon returning, indicated an intention to declare a mistrial. Neither side objected (although the prosecutor asked for the basis for the ruling). The jury was dismissed, and the defendant subsequently entered a plea of once in jeopardy. (*Curry, supra*, 2 Cal.3d at pp. 711–712.) On appeal, the Supreme Court upheld that plea.

■ The Supreme Court recognized that consent can be implied by conduct, such as the request for a mistrial, but noted that defense counsel did not request a mistrial here, but sought only a limiting instruction. (*Curry, supra*, 2 Cal.3d at p. 713.) While the Supreme Court did not expressly address counsel's silence *after* the court indicated an intention to declare a mistrial, the court did state that "[w]hen a trial court proposes to discharge a jury without legal necessity therefor, the defendant is under no duty to object in order to claim the protection of the constitutional guarantee, and his mere silence in the face of an ensuing discharge cannot be deemed a waiver." (*Ibid.* [citing *Miller, Hutson*, and *Valenti*].) As discussed above, none of the cases on which the Supreme Court relied considered the circumstance of a mistrial declared *before the case was given to the jury* in which defense counsel *legally possessed the right to consent on the part of the defendant* and remained silent. Moreover, in *Curry*, defense counsel had requested a remedy less severe than a mistrial—a limiting instruction. When defense counsel has requested a limiting instruction, it can be inferred that counsel would oppose the more severe remedy of a mistrial.[27]

---

[27] Indeed, while the *Curry* court did not phrase it in quite these terms, it concluded that counsel's request for a limiting instruction could in no way be read as a consent to a mistrial. "When the record is fairly read, it is clear that defense counsel requested no more than a cautionary instruction advising the jury that the alleged threats of Louis Lee, reported in the testimony of [the witness], were hearsay as to these petitioners. Counsel neither objected to this testimony as such, nor moved to strike it; indeed, he expressly represented to the court that he had no quarrel with it. In these circumstances, petitioners' simple request for an admonition

### e. Curry's Progeny

There have been several cases which have simply cited *Curry*, without considering (1) whether the facts of the case involved defense counsel's request for a lesser remedy than mistrial or (2) whether the legal underpinnings of *Curry* should be reconsidered given subsequent authority that the defendant need not personally consent to a mistrial.[28]

In *People v. Compton, supra*, 6 Cal.3d 55, the Supreme Court considered the case of the midtrial dismissal of an alternate juror who, it appeared, may have been biased against the defendant.[29] Defense counsel brought the issue to the attention of the trial court. The court asked defense counsel if he was seeking a mistrial; counsel "squarely denied that was his purpose." (6 Cal.3d at p. 62.) Although the trial court expressly found that the alternate juror was not unable to serve, the court dismissed the juror out of an abundance of caution. (*Id.* at p. 60.) Although 12 jurors remained, the trial court sought consent of counsel to proceed without an alternate. Without receiving such consent, and erroneously believing that trial could not continue in the absence of a stipulation, the court stated that it felt a mistrial was the only remaining course left, and asked counsel whether they had any " 'strong objections' " to it. The prosecutor said " '[n]o comment.' " The court asked defense counsel if he had " 'anything further' "; he did not. (*Id.* at p. 63.) The trial court declared a mistrial and dismissed the jury. (*Id.* at p. 61 & fn. 5.)

On appeal, the Supreme Court upheld the defendant's plea of once in jeopardy. As to the issue of consent, relying on *Curry*, the Supreme Court stated, "The effect of a failure to object is no longer an open question . . . ." (*People v. Compton, supra*, 6 Cal.3d at p. 63.) The court further stated, "No grounds are shown to distinguish the present case from *Curry* on this point, and no consent to a mistrial may therefore be implied from defendant's failure to voice an objection." (*Ibid.*)

---

on an evidentiary matter cannot be magnified into a waiver of their constitutional protection against double jeopardy." (*Curry, supra*, 2 Cal.3d at p. 713.)

[28] Supreme Court cases citing *Curry* without discussion include *People v. Upshaw* (1974) 13 Cal.3d 29, 34 [117 Cal.Rptr. 668, 528 P.2d 756] (silence does not constitute consent to the mistrial even when defense counsel invited the error which caused the mistrial); *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 77, footnote 20 [2 Cal.Rptr.2d 389, 820 P.2d 613] (citing *Curry* as support for a similar rule in a different context); and *People v. Saunders, supra*, 5 Cal.4th at pages 591–592 (failure to object to the discharge of a jury waives a claim of statutory error, but not a claim of double jeopardy). The latter case is particularly interesting because, while it accepts without question that *Curry* is still the law, it discusses at length policy reasons which support the general rule that a failure to object results in forfeiture of the right sought to be asserted. (*People v. Saunders, supra*, 5 Cal.4th at pp. 589–590.)

[29] The alternate juror, while getting a haircut, told his barber that he found it hard to keep an open mind in a case such as this one, and that other prospective jurors had been rejected for similar thoughts. The alternate juror was apparently unaware that the barber's partner, who was in the shop at the time, was the defendant's brother. (*People v. Compton, supra*, 6 Cal.3d at p. 59, fn. 2.)

*Compton* is similar to *Curry* in that it was not a case involving solely the silence of defense counsel. Instead, defense counsel had earlier placed on the record his position that he was *not* seeking a mistrial. 'Counsel's refusal to speak when subsequently asked if he had "anything further" cannot be interpreted as implied consent to a mistrial when it was likely simply a reaffirmation of counsel's earlier statement that he was not seeking a mistrial.

In *People v. Chaney* (1988) 202 Cal.App.3d 1109 [249 Cal.Rptr. 251], the jury informed the trial court that it was unable to reach a verdict. While the trial court initially believed further deliberation would not assist the jury, it was persuaded by defense counsel to further inquire of the jury as to the number of ballots it had taken. The trial court agreed to so inquire, but stated, " 'If it doesn't change my mind, I will grant a mistrial. If you don't want me to do it after I ask that, you let me know.' " (*Id.* at p. 1113.) After the jury indicated that it had taken six or seven ballots, the trial court found the jury hopelessly deadlocked and declared a mistrial. (*Id.* at p. 1114.) The defendant subsequently entered a plea of once in jeopardy. On appeal, the court considered the issue of consent to the mistrial.[30] Division One of the Second District Court of Appeal stated, "Contrary to the People's characterization, defense counsel's remarks and subsequent silence when invited to object do not clearly evidence consent; there simply is no qualitative difference between the circumstances at hand and those present in [*Compton*] and [*Curry*]." (202 Cal.App.3d at p. 1118.) Apparently, it was not raised before the court that, since the case had been submitted to the jury, Penal Code section 1140 *prohibited* discharge of the jury by consent, unless the consent of both parties was entered upon the minutes. Thus, silence could not have constituted consent in *Chaney* in any event, regardless of *Compton* and *Curry*.[31]

> 5. *Curry Should Not Apply when Conduct Preceding Defense Counsel's Silence Leads the Court to Reasonably Believe Defendant Consents to the Mistrial*

Although we have a concern as to the current scope and extent of the application of *Curry*, given the history of the law and intervening developments, we are, of course, bound by the Supreme Court's opinion. However, despite defendant's argument to the contrary, we conclude that the instant

[30] The court rejected legal necessity as a justification, as it appeared that the trial court should have taken a partial verdict. (*People v. Chaney, supra*, 202 Cal.App.3d at pp. 1118–1120.)

[31] Moreover, we disagree with the *Chaney* court to the extent it saw "no qualitative difference" between the facts in *Chaney* and those of *Curry* and *Compton*. In both *Curry* and *Compton*, defense counsel had previously indicated that the defendant did not want a mistrial, either expressly or by seeking a lesser remedy; in *Chaney*, there was no such expression.

case is not controlled by *Curry*. This is not a case of "mere silence," and certainly not a case of silence following a statement indicating a lack of consent to a mistrial. While it is true that defense counsel in this case was silent when given a final opportunity to object immediately before the declaration of a mistrial, he had previously fully participated in the discussion and led the trial court to believe, through his actions and express statements, that he consented to the procedure ultimately followed by the court. Thus, the issue presented by this case is one of whether defense counsel's affirmative conduct was sufficient to give rise to an implication of consent. We conclude that it was.

As we discussed above, California law is clear that consent can be inferred from defense counsel's conduct (*People v. Boyd, supra,* 22 Cal.App.3d at p. 717). Cases have held that consent is implied when[32] (1) the defendant moves for, or joins in a motion for, a mistrial (*Curry, supra,* 2 Cal.3d at p. 713); (2) counsel states that, as the result of an error, the case " 'should either result in a mistrial or an instructed verdict' " (*People v. Kelly* (1933) 132 Cal.App. 118, 122 [22 P.2d 526]); or (3) after the prosecution successfully amended the information after the jury was sworn, defense counsel moves for a two- or three-week continuance in order to prepare to meet the new charges, and agrees that the case should be referred back to the criminal department for resetting (*People v. Ramirez, supra,* 27 Cal.App.3d at pp. 668–670).

As to the issue of the proper interpretation of possibly ambiguous statements of defense counsel, the *People v. Kelly* court stated as follows: "It may be further observed that the statements [defense counsel] made were such as would naturally lead the court to believe that the defendant consented to a mistrial order. Had nothing been said in this regard, the court could have protected the rights of the People by proceeding with the case. Even if the statements made are capable of a double construction, they should be viewed in the light of the circumstances in which they were uttered and with a view of determining what was intended. Thus viewed, we think the statements made were such as to justify the court in believing that an order of mistrial

---

[32] It must be remembered that these cases were issued before it was determined that defense counsel could consent to the dismissal of the jury on behalf of a defendant. Thus, at the time that those cases considered implied consent, they required the defendant personally to consent, and were thus considering the circumstances in which *the defendant* would be considered to have impliedly consented, based on defense counsel's affirmative request for relief. Logic suggests that since it has now been decided that defense counsel alone may consent to a mistrial, without the defendant's express affirmance, a somewhat broader scope of conduct on the part of defense counsel should be sufficient to constitute consent. In other words, while a *defendant's* consent will be implied when *defense counsel* affirmatively seeks relief that would be inconsistent with a lack of consent to a mistrial, *defense counsel's* consent may be implied in circumstances shy of such an affirmative request.

was consented to. Under such circumstances an appellant may not insist upon such a construction of statements made by him as would only tend to show that the court was misled thereby." (*People v. Kelly, supra,* 132 Cal.App. at pp. 123–124.)

 Considering all of the foregoing, we conclude that an uncritical application of the language of *Curry* could result in a substantial injustice when, although defense counsel was silent when the mistrial was declared, such silence occurred in the following circumstances: (1) defense counsel earlier participated in a discussion which led the trial court to reasonably believe defense counsel consented to the declaration of a mistrial; (2) defense counsel was aware, or should have been aware, that counsel had given the trial court that impression; (3) defense counsel was presented with the opportunity to disabuse the court of that belief, but failed to do so; and (4) dismissal of the jury and the declaration of a mistrial occurred prior to the submission of the case to the jury (i.e., Pen. Code, § 1140 has no application) and, indeed, prior to the opening statements or presentation of any evidence.

### 6. Policy Considerations Support Our Conclusion

 Several policy considerations support our holding. First, the California Supreme Court has recognized that a certain flexibility is required in approaching claims of double jeopardy. " ' "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense . . . . " ' [Citation.] Courts 'have disparaged "rigid, mechanical" rules in the interpretation of the Double Jeopardy Clause. [Citation.]' [Citation.] 'The exaltation of form over substance is to be avoided.' [Citation.] The standards for determining when a double jeopardy violation has occurred are not to be applied mechanically. [Citations.]" (*People v. Saunders, supra,* 5 Cal.4th at p. 593.) Thus, we believe that the California Supreme Court would not be in favor of a literal application of the language of *Curry,* without first considering relevant factual distinctions, intervening legal developments, and whether the policies underlying the principles of double jeopardy are advanced or frustrated by the result.

Second, we return to *State v. Richardson, supra,* 25 S.E. 220, the South Carolina case on which *Hutson,* and therefore *Curry,* relied. While the South Carolina court was reluctant to infer consent from silence of *a defendant* who might not be aware of the rights at issue (*id.* at p. 222), different considerations are at issue when defense counsel is given the trial court's proposed solution to a problem for counsel's input. Counsel should not be permitted to remain silent in this situation, "leaving the false impression of acquiescence even while anticipating a subsequent objection. If this were permissible,

attorneys could—by their silence—lull the court into taking actions that could not later be undone." (*In re Marte v. Berkman, supra*, 925 N.Y.S.2d at p. 390.) A defendant's constitutional rights are valuable, and must be respected; but they are not tools for defense counsel to use in order to trap the court into giving up the state's right to try the defendant.[33]

Third, concluding that defense counsel's silence constituted consent to the mistrial in this case, in which the trial had not really begun, would support one of the most important public policies related to the double jeopardy issue. Society has a strong interest in giving the prosecution one complete opportunity to convict those who have violated its laws. (*Arizona v. Washington* (1978) 434 U.S. 497, 509 [54 L.Ed.2d 717, 98 S.Ct. 824].) As the United States Supreme Court stated in a somewhat different context, "There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws." (*Ohio v. Johnson* (1984) 467 U.S. 493, 502 [81 L.Ed.2d 425, 104 S.Ct. 2536].) Clearly, there was no government overreaching by the prosecutor in this case;[34] just an attempt by the trial court to conserve judicial resources when it became reasonably apparent that the impaneled jury had lost so many members as to make it unlikely that sufficient jurors would remain to render a verdict in what promised to be a lengthy trial.

---

[33] Indeed, defendant's briefing in this case *recognizes* the proposition that a failure to object generally constitutes consent. For example, defendant's opposition to the brief of amicus curiae argues that counsel had agreed to delay the trial for Juror 6, stating, "if the parties had not agreed to such a delay, one might have expected one or the other of the attorneys to have voiced an objection to the court's comments [to the jury regarding delaying the trial]. No such objection was made because of the obvious understanding that trial would be delayed to November 9 and petitioner's expert witness called out of order if necessary." Yet, according to the trial court and the prosecutor, that understanding *also* included the terms that trial would not go ahead without at least one alternate, and that if any juror indicated an inability to serve (if the trial were delayed), the case would not go ahead. Defendant would have a failure to object constitute consent to *some* terms of an agreement, but not *other* terms of the very same agreement.

[34] In *People v. Superior Court (Marks), supra*, 1 Cal.4th at page 71 the Supreme Court concluded that, when a defendant's conviction is deemed to be of a lesser degree due to the jury's failure to determine the degree of the crime (Pen. Code, § 1157), the defendant may invoke double jeopardy to the same degree as if the defendant's conviction had followed an express finding by the jury of the lesser degree. The Supreme Court stated, "We perceive no unfairness to the People in our holding. The prosecution is not deprived of its 'one complete opportunity to convict those who have violated [the] laws' " as the prosecution had an opportunity to convict the defendant of the greater offense. (*People v. Superior Court (Marks), supra*, 1 Cal.4th at p. 77.) In the instant case, by contrast, the prosecution had only the opportunity to impanel a jury.

Fourth, *Curry* itself explained its rationale for respecting a defendant's right to withhold consent from the declaration of a mistrial.[35] "A defendant may choose not to move for or consent to a mistrial for many reasons. He may be of the opinion that no error in fact occurred, or if it occurred, that it was not prejudicial. He may believe that any error in admitting improper evidence can be cured by a motion to strike or a request for admonition, or can be refuted by impeachment of the witness or contrary defense evidence. Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare." (*Curry, supra,* 2 Cal.3d at p. 717.) None of these considerations are applicable to this case, where the trial had not yet begun, and new jury selection could have started shortly thereafter.[36]

All of these policy factors support our conclusion that a literal or mechanical application of the language of *Curry* to the facts in the instant case is not appropriate. The trial court found that, by defense counsel's conduct over the course of the proceedings, there was an implied consent to the dismissal of the jury and the resulting mistrial. We now turn to whether this conclusion is supported by the record.

### 7. *The Record Supports the Trial Court's Findings*

██ The trial court, in ruling on defendant's motion to dismiss, found that there had been implied consent to the dismissal of the jury. Giving due deference to the trial court as trier of fact, we conclude that the record supports the trial court's findings.[37] Preliminarily, it cannot be disputed that the trial court believed, at the time it dismissed the jury, that it did so with the consent

---

[35] California law differs from federal law on the issue of whether a mistrial declared for the defendant's benefit, although without his consent, is sufficient to constitute jeopardy. In California, it is. (*Curry, supra,* 2 Cal.3d at pp. 715–716.)

[36] Moreover, we note that defense counsel never asserted that any of these reasons came into play. Defense counsel's declaration submitted in support of the motion to dismiss stated only that counsel failed to hear or misunderstood the court's comments and that he had not thought the court would declare a mistrial; he never stated that he or his client had any tactical or personal reason for not wanting to consent to the mistrial.

[37] While we have before us only the cold record, the trial court was present at the actual hearing when the mistrial took place. Thus, the court was able to rely on its own recollection of the proceedings, including body language, tones of voice, nods, and so forth. While the better procedure is clearly to place any agreement to dismiss the jury on the record, expressly obtaining the verbal consent of both counsel, it would be a miscarriage of justice to allow a

of both counsel. Indeed, moments after it dismissed the jury, the court expressly stated, "it was agreed that if we would have had only 12 jurors, we would start over . . . ." Clearly, the court would not have made such a statement had it not believed, at the time, that there was such an agreement.[38]

### a. *The Trial Court Reasonably Believed There Was Consent*

The record indicates that the court was reasonable in its belief that there was an agreement. Preliminarily, we believe that it is improper to focus our review of the record on any specific words spoken at any single point in time, without regard to the context of the proceedings. It is apparent that the court and both counsel were attempting to respond to constantly changing circumstances, and the nature of the agreement between the court and counsel was continually evolving.[39] With that understanding, we review the proceedings on the morning of November 7, 2011, as reflected by the record.

By that morning, two things had already occurred. First, the jury and four alternates (at defense counsel's request) had been sworn. Second, one member of the panel, Juror 3 (who stated he could not be impartial), had already been dismissed. Before calling the case, the court had learned that issues had arisen with "other jurors," and went on the record, with counsel, outside the presence of the jury "to attempt to deal" with those issues. As discussed above, the court next discussed Juror 4 (fiancée broke ankle) with counsel. When defense counsel suggested asking the juror whether there was any alternative to him being the caretaker for his fiancée, the court immediately made the inquiry. The result was in the negative, and it appeared to the court that there was no way to retain the juror. The next juror was Juror 32 (childcare obligations). Although the trial court was initially inclined to retain the juror due to her failure to timely raise the issue during voir dire, defense counsel requested her dismissal, and the court complied.

At this point, the jury was down three members, and the court and counsel had not yet addressed Juror 6 (pinkeye). As this created the potential that this lengthy trial would begin without any alternates (when counsel and the court had agreed to four, because of the upcoming holidays), the court proposed a course of action to follow "if we are down to no alternates." Seeing the panel

---

double jeopardy defense to prevail simply because defense counsel made his consent to the dismissal known to the court by means other than an expressly stated approval.

[38] Moreover, an experienced trial judge, such as the one in this case, certainly would have understood the consequences of dismissing a sworn jury without the consent of defense counsel and would not have dismissed the jury had he not believed that counsel had consented.

[39] However, we do agree with the trial court's statement at the hearing on the motion to dismiss that the "better practice" when such a situation arises is "to dot every 'i' and cross every 't.'"

already falling apart, the court proposed that, if no alternates were left, it would ask the jurors if they would be able to serve into the last week of November. If any juror indicated an inability to do so, the court would end the matter. Not only did defense counsel *fail to object* to this statement, he expressly stated that "[r]ight now where we are at, the *only problem* I have" is making certain his expert would testify. (Italics added.) Thus, it was reasonable for the court to assume that defense counsel agreed to the court's proposed procedure.

Thereafter, the prosecutor stated that she would agree to take defendant's expert out of order because she wanted to wait for Juror 6 and preserve one alternate. Defense counsel did not disagree, thus causing the court to reasonably believe that the parties had agreed to proceed if an alternate could be preserved. Or, putting it another way, the court reasonably believed that the prosecutor would not have agreed to defendant's request to take the expert out of order, unless the alternate could be preserved.

Thus, defense counsel, by his participation in the discussion, his express statements, and his failure to disagree with the prosecutor's statement regarding preserving an alternate, gave the trial court reason to believe that (1) the trial court's proposed procedure for asking the jury about additional problems was acceptable and (2) the parties did not wish to proceed without an alternate. Further evidence of defendant's agreement to these terms is the fact that defense counsel made no objection when the trial court subsequently questioned the jury, nor when the trial court subsequently stated on the record that the parties had agreed not to proceed without an alternate.[40]

### b. *Defense Counsel Knew or Should Have Known the Trial Court Held This Belief*

Defense counsel's declaration in support of the motion to dismiss is notable for its failure to indicate, for example, that counsel *disagreed* with the court's intent to declare a mistrial but believed, under *Curry*, that he was not required to bring this disagreement to the court's attention. Instead, defense counsel states, no fewer than *four* times, that he did not understand or hear what the court had stated, yet he sought no clarification.[41] This is not a

---

[40] Had defense counsel disagreed with this statement, there would have been no possible tactical reason for failing to object when the trial court placed it on the record, as the trial court had already dismissed the jury.

[41] In his declaration, defense counsel stated that, when the court proposed asking the jurors if they could serve to the last week in November, "the reasoning behind the court's statement was not clear" to him, as he believed such an inquiry was unnecessary. He nonetheless "set aside [his] confusion" without seeking clarification. Defense counsel next stated that, when the court stated, "The bottom line is we are done," defense counsel "was confused by the court's

legitimate basis on which to obtain a dismissal. The trial court, throughout the proceedings, expressed its plan for dealing with the collapse of the jury panel, giving counsel the opportunity for input at every turn. Defense counsel's participation in these discussions provided an ample basis for the trial court to believe that counsel consented to the procedure ultimately implemented. Counsel should not be heard to argue, after the fact, that his participation did not constitute consent, on the basis that he did not hear or understand the trial court. If defense counsel did not hear or understand, he was obligated to seek clarification. By failing to do so, defense counsel is barred from now relying on the claim that he did not know what the court stated. In short, it appears from the record that defense counsel was well aware of the trial court's understanding of the agreement on how to proceed; if defense counsel was not actually aware because he misunderstood the court, his failure to obtain clarification should result in counsel being charged with such knowledge.

### c. *Defense Counsel Had an Opportunity to Inform the Court That There Was No Agreement, but Failed to Do So*

Finally, our review of the record indicates that defense counsel had several opportunities to inform the court that the court's understanding of the agreement on how to proceed given the unusual circumstances was not, in fact, correct. Counsel's input was sought repeatedly and, in fact, accepted in every instance it was given.[42] Immediately prior to dismissing the jury, the trial court called counsel to sidebar and stated, "I believe they win." The court was clearly indicating its belief that the jurors who did not want to serve had "won," requiring dismissal of the panel under the terms of the agreement with counsel. The court was seeking input from counsel on whether, in fact, this was the case. It is significant that the court did not simply dismiss the jury once Juror 2 indicated that he had suffered a heart attack; the court gave counsel a final chance to disagree. Counsel did not do so. Under all of the circumstances of this case, we conclude that counsel's failure to state any disagreement constituted implied consent to the dismissal of the jury.

---

comment." Rather than seek clarification, defense counsel moved on. Defense counsel also stated that, when, just prior to dismissing the jury, the trial court called counsel to sidebar and stated, "I believe they win," defense counsel "had no idea what [the court] meant by this comment." Finally, defense counsel stated that, when the court expressly placed the terms of the agreement on the record after the jury was dismissed, he "did not hear [the trial court] make this comment . . . as [he] was conferring with" defendant. Defense counsel did not ask the court to repeat what he now states he had failed to hear.

[42] The court (1) questioned Juror 4 as suggested by defense counsel; (2) immediately dismissed Juror 32 when defense counsel argued for her dismissal; and (3) made certain that any agreement satisfied defense counsel's concern that his expert witness be heard out of order.

## DISPOSITION

The petition for writ of prohibition is denied.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied June 6, 2012, and the petitioner's petition for review by the Supreme Court was denied September 12, 2012, S203673.